**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| POSCO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-04229 |

## COMPLAINT

Plaintiff POSCO, by and through counsel, alleges herein as follows:

## JURISDICTION

1. POSCO brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain cold-rolled steel flat products ("CR") from the Republic of Korea ("Korea"), Case No. C-580-882, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *See Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Final Results of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 56,130 (Dep't Commerce Sep. 1, 2026). and accompanying Issues and Decision Mem. ("I&D Mem.").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

## PARTIES AND STANDING

3. POSCO is a producer of CR from the Republic of Korea, who also exports CR to the United States and other countries via its affiliated export trading company, POSCO International.

4. POSCO was a party to the underlying administrative proceeding that led to the determination that is being challenged herein. POSCO was selected by Commerce as one of the two mandatory respondents in the review. POSCO responded to all of Commerce's questionnaires during the course of the review, participated in on-site verification, submitted a case brief, and participated in a hearing at Commerce. Therefore, POSCO is an "interested party" pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A). As an "interested party" that actively participated in the proceeding below and was adversely affected by Commerce's *Final Results*, POSCO has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

## TIMELINESS OF THIS ACTION

5. On September 1, 2026 Commerce published the *Final Results* in the *Federal Register*. *See Final Results*, 91 Fed. Reg. 56,130. POSCO timely filed a Summons on September 29, 2026, within thirty days of the publication of the *Final Results* in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and U.S. Court of International Trade Rules 3(a)(2) and 6(a). Within thirty days of filing the September 29, 2026 Summons, POSCO timely files this complaint.

## STATEMENT OF FACTS

6. On October 17, 2024, Commerce initiated an administrative review of the CVD order on CR from Korea for the 2023 period of review ("POR"). *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 83,644, 83,651–652 (Dep't

Commerce Oct. 17, 2024). Commerce selected POSCO as one of the two mandatory respondents in this administrative review and, on December 31, 2024, issued initial questionnaires to the Government of Korea ("GOK") and POSCO. *See* Mem. from Eva Kim, International Trade Policy Specialist, to Constance Handley, Acting Director, "Administrative Review of the Countervailing Duty Order on Cold-Rolled Steel Flat Products from the Republic of Korea: Respondent Selection" (November 26, 2024)(ACCESS Barcode 4671139); Letter from Gregory W. Campbell, Director, Subsidies & Economic Analysis, "Administrative Review of the Countervailing Duty Order on Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Countervailing Duty Questionnaire" (Dec. 31, 2024)(ACCESS Barcode 4690482)("Initial Questionnaire").

7. On February 18, 2025, POSCO submitted its initial questionnaire response. Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: POSCO's Initial Questionnaire Resp." (Feb. 18, 2025)(ACCESS Barcode 4714769)("POSCO IQR").

8. POSCO also submitted responses to the initial questionnaire on behalf of its affiliated export trading company, POSCO International, as well as various other affiliates that are not relevant to this appeal.[1] *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: POSCO International's Initial Questionnaire Resp." (Feb. 18, 2025)(ACCESS Barcode 4714644)("POSCO International IQR").

---

[1] These other affiliates include POSCO's holding company, POSCO Holdings, and its cross-owned input suppliers, POSCO Future M, POSCO M-Tech, POSCO Nippon Steel RHF Joint Venture Co., Ltd., and POSCO Mobility Solution.

9. On February 24, 2025, the GOK submitted its initial questionnaire response. Letter from Shin & Kim LLC to Sec'y Commerce, "Administrative Review of the Countervailing Duty Order on *Certain Cold-Rolled Steel Flat Products From the Republic of Korea*: GOK's Response to Section II of the Initial Questionnaire" (Feb. 24, 2024)(ACCESS Barcode 4718247)("GOK IQR").

10. Among others, Commerce reviewed programs including (1) the provision of electricity for less than adequate remuneration ("LTAR"), and (2) the provision of electricity for more than adequate remuneration ("MTAR"). *See* Initial Questionnaire at III-10–III-11. These are the two programs being challenged by POSCO in this appeal.

11. With respect to the provision of electricity for LTAR program, Commerce had reviewed the program in previous reviews and established a methodology for analyzing whether the provision of electricity provided a countervailable benefit. *See, e.g., Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020,* 88 Fed. Reg. 21,606 (Dep't Commerce Apr. 11, 2023), and accompanying Issues and Decision Mem. (ACCESS Barcode 4362869-02 )("CR 2020 I&D Mem.") at 66–71. Under this benefit methodology pursuant to 19 C.F.R. § 351.511(a)(2)(iii), Commerce requires information on whether the government price is consistent with market principles, including the government's price-setting philosophy, whether the price charged is sufficient to recover costs with a rate of return sufficient to ensure future operations, or whether there is discrimination among various users. *See* CR 2020 I&D Mem. at 66–67.

12. To evaluate whether the electricity for LTAR program conferred countervailable benefits, Commerce requested that the GOK provide information on its electricity pricing principles, the revenue and costs for providing electricity to various classes of users, and whether

it generated sufficient revenue to cover costs and return on capital while providing each class of electricity during the POR. Initial Questionnaire at II-5–II-6. Commerce also requested that POSCO provide data on the rates it paid for its electricity purchased from the GOK during the POR. Initial Questionnaire at III-8. The information is relevant to the analysis of whether the GOK provided electricity to POSCO at rates that are consistent with market principles, under which the GOK can recover its costs plus a reasonable return.

13. In response, the GOK provided Commerce with detailed information regarding its pricing methodology and cost recovery data in its initial questionnaire response. *See* GOK IQR at 20–24, 29–52. POSCO also submitted the requested data regarding the prices and quantities of electricity purchased during the POR. *See, e.g.,* POSCO IQR at 37–39; *see also* POSCO International IQR at 31–32. POSCO purchases electricity from the Korea Electric Power Corporation ("KEPCO"). This data was treated as confidential.

14. To evaluate whether the electricity for LTAR program was specific, Commerce requested that the GOK provide information and data regarding the industries that consumed electricity, including industrial electricity, in Korea. Initial Questionnaire at II-11. This information is relevant to the analysis of whether any industry or enterprise received a "disproportionate" amount of the benefit from the electricity for LTAR program such that the program could be considered *de facto* specific under 19 U.S.C. § 1677(5A)(D)(iii)(III).

15. The GOK provided the requested data in response to the Initial Questionnaire for Commerce's *de facto* specificity analysis. *See* GOK IQR at 55–58. The GOK reported the amount of electricity provided to the steel industry and to the largest 10 industries consuming electricity during the review period. *See id.* This data was treated as confidential.

16. To evaluate whether the electricity for MTAR program conferred a benefit, Commerce requested POSCO to report its sales of electricity. Initial Questionnaire at III-11. The information is relevant to the MTAR program because Commerce compares the price at which POSCO sold electricity to the price at which it purchases electricity and treats the premium on electricity sales as the benefit.

17. In response, POSCO submitted data on the prices and quantities of its sales of electricity during the POR. *See e.g.,* POSCO IQR at 39–41; *see also* POSCO International IQR at 32–33. These sales were made to the Korea Power Exchange ("KPX") who operates the market for electric power in Korea. This data was also treated as confidential.

18. On March 5, 2026, Commerce issued its *Preliminary Results*. *See Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results and Rescission, in Part, of Countervailing Duty Administrative Review; 2023*, 91 Fed. Reg. 10,795 (Dep't Commerce Mar. 5, 2026) ("*Preliminary Results*"), and accompanying Decision Mem. ("PDM").

19. With respect to the provision of electricity for LTAR program, Commerce preliminarily determined that the GOK provided a countervailable benefit to POSCO and certain cross-owned affiliates, including POSCO International, its trading company, as well as other affiliates not relevant to this appeal. *See* Mem. from Seth Brown, International Trade Compliance Analysts, Office IX, to The File, "Countervailing Duty Administrative Review of Certain Cold-Rolled Steel Flat Products from the Republic of Korea; 2023: Preliminary Results Calculations for POSCO" at Attachment II (Feb. 27, 2026)(ACCESS Barcode 4888741)("Preliminary Results Calc."). Commerce determined that the GOK provided a benefit to POSCO and its named affiliates because, during the POR, certain of its industrial tariff rates did not recover costs plus a rate of return. *See* PDM at 35.

20. Commerce also determined that the provision of electricity was *de facto* specific under 19 U.S.C. §1677(5A)(D)(iii)(III) because the steel industry and three other industries combined consumed a disproportionately large amount of electricity in Korea. *Id.* at 34–36.

21. With respect to the provision of electricity for MTAR program, Commerce preliminarily determined that the GOK provided a countervailable benefit to POSCO and POSCO International by purchasing the electricity generated by them for MTAR. *See* Preliminary Results Calc. at Attachment II. Commerce preliminarily determined that the GOK provided a benefit because the rates the GOK paid for the electricity purchased from POSCO and POSCO International exceeded the rates the GOK charged them when selling electricity. *See* PDM at 36–39.

22. When calculating the subsidy rate for the provision of electricity for MTAR program, Commerce attributed the benefit allegedly received by POSCO International, POSCO's export trading company, to POSCO in its entirety on the ground that POSCO International exported all the subject merchandise produced by POSCO to the United States during the POR. *See id.* at 10–11, 39.

23. POSCO submitted a case brief on April 3, 2026. *See* Letter from Taft Stettinius & Hollister, LLP to Sec'y Commerce, "Certain Cold-Rolled Steel Flat Products from the Republic of Korea, Case No. C-580-882: POSCO's Case Br." (Apr. 3, 2026)(ACCESS Barcode 4905308).

24. In its case brief, POSCO argued that the electricity for LTAR program was not countervailable because it is not specific. *See id.* at 5–15.

25. POSCO also argued that Commerce should reverse its decision to attribute benefits to POSCO from POSCO International's sales of the electricity for MTAR because

POSCO International's sale of electricity was unrelated to POSCO's manufacture, production, or export of subject merchandise imported into the United States. *See id*. at 17–24. POSCO argued that by attributing to POSCO the benefit its export trading company allegedly received in a program relating to the sales of electricity, Commerce violated its statutory obligation pursuant to section 701(a)(1) of the Tariff Act of 1930, which authorizes Commerce to impose duties to offset "a countervailable subsidy with respect to the *manufacture, production, or export* of a class or kind of merchandise imported, or sold (or likely to be sold) for importation into the United States . . . ." (emphasis added). *See id*.

26. POSCO also argued that Commerce should adjust the benchmark for the electricity for MTAR program in the benefit analysis. *See id*. at 24–30. Specifically, POSCO argued that Commerce erroneously double-counted or inflated the benefit for the MTAR program by using, as benchmarks, electricity rates it had already found countervailable under the electricity for LTAR program. *See id*. To avoid this double counting, POSCO argued that Commerce should use the upwards-adjusted prices used to calculate the benefit from the electricity for LTAR program. *See id.* and Attachment 1.

27. In the *Final Results*, Commerce continued to determine that the GOK provided a countervailable benefit to POSCO and its named affiliates, including, among others, POSCO International, through the provision of electricity for LTAR. *See* Mem. from Rachel Accorsi & Joshua Nixon, International Trade Compliance Analysts, Office VIII, to The File, "Countervailing Duty Administrative Review of Certain Cold-Rolled Steel Flat Products from the Republic of Korea; 2023: Final Results Calculations for POSCO" at Attachment II (Aug. 25, 2026)(ACCESS Barcode 4947156)("Final Results Calc.").

28. Addressing POSCO's argument regarding the specificity of the electricity for LTAR program, Commerce found that the GOK's provision of electricity for LTAR was *de facto* specific in accordance with 19 U.S.C. § 1677(5A)(D)(iii)(III) because the steel industry receives a disproportionate amount of the subsidy. *See* I&D Mem. at 29–33. To support its *de facto* specificity determination, Commerce relied on usage data provided by the GOK for the steel industry and the top ten largest electricity-consuming industries, reflecting their consumption as a proportion of total electricity consumption in Korea and within the industrial classification. *See id*. at 32–33. The GOK data were proprietary, but Commerce found that they demonstrated that the steel industry consumed, on average, more electricity than the majority of industries in Korea, and that two or three other industries combined consumed a disproportionately large amount of electricity. *See id*. Commerce found this sufficient to support a disproportionality specificity determination under 19 U.S.C. § 1677(5A)(D)(iii)(III). *See id*.

29. With respect to the electricity for MTAR program, Commerce continued to determine that the GOK provided a countervailable benefit to POSCO and POSCO International in the *Final Results*. *See* Final Results Calc. at Attachment II. Commerce continued to attribute the benefit allegedly received by POSCO International to POSCO in its entirety. *See* I&D Mem. at 52–56. Commerce claimed that its attribution methodology was consistent with section 701(a)(1) of the Act because attributing the benefit received by POSCO International to POSCO allows Commerce to cumulate the subsidies received by the trading company, and Commerce does not need to consider whether the subsidy was tied to the trading company's export activities. *See id*.

30. Moreover, Commerce continued to use the actual purchase prices paid by POSCO and POSCO International as the benchmark for the electricity for MTAR program, rather than

the upward-adjusted, market-based prices it calculated for the electricity for LTAR program. *See id.* at 58–62. Responding to POSCO's arguments that Commerce wrongly selected the non-market-based electricity rates as benchmarks for its benefit analysis in the electricity for MTAR program, Commerce claimed that treating the difference between the rates that POSCO actually paid and sold electricity during the POR enables Commerce to capture the benefit POSCO obtained through the electricity MTAR program. *See id.* Commerce insisted that it properly used the unadjusted rates as benchmarks because they reflect the prevailing market conditions under which POSCO bought and sold electricity to the GOK. *See id.*

31. In the *Final Results*, Commerce calculated an *ad valorem* subsidy rate of 0.30 percent for the provision of electricity for LTAR and 2.87 percent for the provision of electricity for MTAR. *See id.* at 7–8. In total, Commerce calculated an *ad valorem* subsidy rate of 3.64 percent for POSCO. *Final Results,* 91 Fed. Reg. at 56,131.

32. This appeal followed.

## **STATEMENT OF CLAIMS**

### **Count One**

33. Paragraphs 1 to 32 are incorporated by reference.

34. Commerce's determination that the GOK's provision of electricity for LTAR to POSCO was *de facto* specific pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(III) is unsupported by substantial evidence and is otherwise not in accordance with law.

### **Count Two**

35. Paragraphs 1 to 34 are incorporated by reference.

36. Commerce's determination to attribute the benefit allegedly received by POSCO International to POSCO in its entirety in the provision of electricity for MTAR program is unsupported by substantial evidence and is otherwise not in accordance with law.

**Count Three**

37. Paragraphs 1 to 36 are incorporated by reference.

38. Commerce's determination to use the actual unadjusted purchase prices that POSCO and POSCO International paid for electricity as the benchmark for the MTAR program, rather than the upward-adjusted prices it used to calculate the benefit from the electricity for LTAR program, is unsupported by substantial evidence and is otherwise not in accordance with law.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

WHEREFORE, POSCO respectfully requests that this Court:

a. Hold that Commerce's *Final Results* are not supported by substantial record evidence and are otherwise not in accordance with law;

b. Remand the *Final Results* to Commerce for a redetermination consistent with the judgment and findings of this Court; and

c. Grant such other relief as the Court shall deem just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
R. Will Planert
Mary S. Hodgins
Nicholas C. Duffey
Xi (Jack) Yang

TAFT STETTINIUS & HOLLISTER LLP
1333 New Hampshire Ave., NW, Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel for Plaintiff POSCO*

Dated: October 27, 2026